UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:
Michael E. Krueger & Meg B. Krueger,
Debtors.

Chapter 13
Case No. 13-14389-CJF

NOTICE OF MOTION BY SETERUS, INC., AS THE AUTHORIZED SUBSERVICER FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA FOR RELIEF FROM AUTOMATIC STAY
RE: PROPERTY LOCATED AT:
N8097 Lac La Belle Drive, Oconomowoc, Wisconsin, 53066-5509

Seterus, Inc., as the authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America ("Movant")[1] has filed papers with the Court to obtain relief from the automatic stay.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant relief from the automatic stay, or if you want the Court to consider your views on the Motion for Relief from Automatic Stay, then within fourteen (14) days of the filing date indicated on this Notice, you or your attorney must file with the Court a written response explaining your position and requesting a hearing at:

Clerk, U.S. Bankruptcy Court
Western District of Wisconsin
120 North Henry Street
Madison, WI 53703

If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the deadline stated above.

[1] **A copy of the Limited Power of Attorney is attached as Exhibit 1.**

You must also mail a copy to:

O'Dess and Associates, S.C.
Attn: Shannon K. Cummings
1414 Underwood Avenue, Suite 403
Wauwatosa, WI 53213

Mark Harring
Chapter 13 Trustee
131 W. Wilson Street, Suite 1000
Madison, WI 53703-3260

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting the relief requested.

Dated at Wauwatosa, Wisconsin this 24th day of March, 2017.

O'DESS AND ASSOCIATES, S.C.
Attorneys for Movant

By: Shannon K. Cummings
State Bar ID No. 1033710

Case No. 13-14389-CJF

**For informational purposes and to comply with applicable law only. This should not be construed as an attempt to collect a debt.**

**O'Dess and Associates, S.C., is attempting to collect a debt and any information obtained will be used for that purpose.**

**If you have previously received a Chapter 7 Discharge in Bankruptcy, this correspondence should not be construed as an attempt to collect a debt.**

Drafted by:
Shannon K. Cummings
O'Dess and Associates, S.C.
1414 Underwood Avenue, Suite 403
Wauwatosa, WI 53213
(414) 727-1591
(414) 727-1590 fax
Scummings@odesslaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION

In re:
Michael E. Krueger & Meg B. Krueger,
Debtors.

Chapter 13
Case No. 13-14389-CJF

MOTION BY SETERUS, INC., AS THE AUTHORIZED SUBSERVICER FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA FOR RELIEF FROM AUTOMATIC STAY
RE: PROPERTY LOCATED AT:
N8097 Lac La Belle Drive, Oconomowoc, Wisconsin, 53066-5509

Seterus, Inc., as the authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America ("Movant"), through its attorneys, O'Dess and Associates, S.C., pursuant to 11 U.S.C. §362(d) of the Bankruptcy Code and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, moves the Court for relief from the automatic stay and in support states as follows:

1. Debtors, Michael E. Krueger and Meg B. Krueger, filed a voluntary petition under chapter 13 of the Bankruptcy Code on September 4, 2013.

2. Debtor, Michael E. Krueger, executed and delivered a note dated July 31, 2006, to Countrywide Bank, N.A., for an original principal sum of $196,000.00 ("Note"). Movant,

Drafted by:
Shannon K. Cummings
O'Dess and Associates, S.C.
1414 Underwood Avenue, Suite 403
Wauwatosa, WI 53213
(414) 727-1591
(414) 727-1590 fax
Scummings@odesslaw.com

directly or through an agent, has possession of the Note and the Note is duly endorsed.    A copy

of the Note is attached as Exhibit 2.

3.      Payments pursuant to the Note are secured by a mortgage ("Mortgage") of even

date signed by Michael Krueger and Meg Krueger and duly assigned to Movant on real property

located at N8097 Lac La Belle Drive, Oconomowoc, Wisconsin, 53066-5509 ("Property").    A

copy of the Mortgage and Assignments of Mortgage are attached as Exhibits 3-6, respectively.

4.      The unpaid principal balance of this loan as of March 10, 2017, as reflected in

Movant's records, is $194,545.92.

5.      Debtors failed to comply with the terms and conditions of the Note and

Mortgage by failing to make the August 1, 2016 payment at $1,623.58 and the September 1,

2016 through the March, 1, 2017 payments at $1,576.49 for a total of $12,659.01 minus $10.78

in suspense for a total of $12,648.23.    A summary of the post-petition mortgage payment history

since the post-petition mortgage payments were last current is attached as Exhibit 7.

6.      The sums set forth in this motion do not include any credit for suspense funds, late

charges, escrow advances, attorneys' fees, costs, or other fees and charges, if any, that might

otherwise be included in the event that a payoff is requested or provided.

7.      Upon information and belief, the Property has an approximate value of

$220,900.00, based upon the tax assessor's estimated fair market value.    A copy of the real estate

tax bill is attached as Exhibit 8.

Drafted by:
  Shannon K. Cummings
  O'Dess and Associates, S.C.
  1414 Underwood Avenue, Suite 403
  Wauwatosa, WI 53213
  (414) 727-1591
  (414) 727-1590 fax
  Scummings@odesslaw.com

8.      Based upon *inter alia* the above, there is no adequate protection as to the secured

interest involved herein, the Property is burdensome and of inconsequential value to the estate,

and cause exists to lift the automatic stay and make inapplicable the 14 day stay pursuant to

Federal Rule of Bankruptcy Procedure 4001(a)(3).

9.      Movant seeks relief for the purposes of exercising its remedies against the

Property permitted by the applicable note and mortgage and non-bankruptcy law, including

foreclosure proceedings in state court, and contacting the debtors by telephone or written

correspondence to, at Movant's option, offer, provide, and enter into a forbearance agreement,

loan modification, refinance agreement or other loan workout/loss mitigation agreement.

10.     Movant further seek an order exempting Movant from further compliance in this

case with Federal Rule of Bankruptcy Procedure 3002.1 effective upon entry of an order granting

relief from the automatic stay.

11.     Movant has retained counsel to pursue this motion and anticipates incurring

attorneys' fees and costs for which it may seek reimbursement.

WHEREFORE, Movant respectfully requests that this Court enter an order:

A.      granting Movant relief from the automatic stay so that Movant, its successors and

assigns, may exercise its remedies against the Property permitted by the applicable note and

mortgage and non-bankruptcy law, including foreclosure proceedings in state court, and

authorizing Movant to contact the debtors by telephone or written correspondence to, at

Drafted by:
    Shannon K. Cummings
    O'Dess and Associates, S.C.
    1414 Underwood Avenue, Suite 403
    Wauwatosa, WI 53213
    (414) 727-1591
    (414) 727-1590 fax
    Scummings@odesslaw.com

Movant's option, offer, provide, and enter into a forbearance agreement, loan modification,

refinance agreement or other loan workout/loss mitigation agreement;

      B.      declaring that the relief granted herein shall survive the conversion of this case

from chapter 13 to any other chapter under the Bankruptcy Code;

      C.      authorizing and directing the Chapter 13 Trustee not to make any further

payments on Movant's proof of claim 7 from funds of the estate upon entry of an order lifting the

automatic stay;

      D.      exempting Movant from further compliance in this case with Federal Rule of

Bankruptcy Procedure 3002.1 effective upon entry of an order granting relief from the automatic

stay; and,

      E.      granting such other and further relief as the Court deems just and appropriate.

Dated at Wauwatosa, Wisconsin this 24th day of March, 2017.

      O'DESS AND ASSOCIATES, S.C.
      Attorneys for Movant

      By:     Shannon K. Cummings
           State Bar ID No. 1033710

           Case No. 13-14389-CJF

Drafted by:
    Shannon K. Cummings
    O'Dess and Associates, S.C.
    1414 Underwood Avenue, Suite 403
    Wauwatosa, WI 53213
    (414) 727-1591
    (414) 727-1590 fax
    Scummings@odesslaw.com

Washington County, Oregon 2011-076340
10/31/2011 02:15:56 PM
D-PA Cnt=1 Stn=2 S AKINS
$10.00 $5.00 $11.00 $15.00 - Total = $41.00
01644476201100763400020022
I, Richard Hobernicht, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify that the within instrument of writing was received and recorded in the book of records of said county.
Richard Hobernicht, Director of Assessment and Taxation, Ex-Officio County Clerk

Record and Return to:
Seterus, Inc.
Title Services Department
14523 SW Millikan Way, Suite 200
Beaverton, OR 97005

LIMITED POWER OF ATTORNEY

FROM: Federal National Mortgage Association

TO: SETERUS, INC

EXHIBIT
1

## LIMITED POWER OF ATTORNEY

Federal National Mortgage Association, a corporation organized and existing under the laws of the United States of America, having an office for the conduct of business at 13150 Worldgate Drive, Herndon, Virginia 20170, constitute and appoints Seterus Inc. 8501 IBM Drive, Building 201 #2DD188, Charlotte, North Carolina 28262 (headquarters), a Corporation organized and existing under the laws of the state of Delaware, its true and lawful Attorney-In-Fact, and in its name, place, and stead and for its use and benefits, to execute, endorse, and acknowledge all documents customarily and reasonably necessary and appropriate for:

1. the release of a borrower from personal liability under the mortgage or deed of trust following an approved transfer of ownership of the security property;

2. the full satisfaction or release of a mortgage or the request to a trustee for a full reconveyance of a deed of trust;

3. the partial release or discharge of a mortgage or the request to a trustee for a partial reconveyance or discharge of a deed of trust;

4. the modification or extension of a mortgage or deed of trust;

5. the subordination of the lien of a mortgage or deed of trust;

6. the completion, termination, cancellation, or rescission of foreclosure relating to a mortgage or deed of trust, including (but not limited to) the following actions:

   a. the appointment of a successor or substitute trustee under a deed of trust, in accordance with state law and the deed of trust;
   b. the issuance of a statement of breach or nonperformance;
   c. the issuance or cancellation or rescission of notices of default;
   d. the cancellation or rescission of notices of sale; and
   e. the issuance of such other documents as may be necessary under the terms of the mortgage, deed of trust, or state law to expeditiously complete said transactions, including, but not limited to, assignments or endorsements of mortgages, deeds of trust, or promissory notes to convey title from Fannie Mae to the Attorney-in-Fact under this Limited Power of Attorney;

7. the conveyance of properties to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), or a state or private mortgage insurer; and

8 the assignment or endorsement of mortgages, deeds of trust, or promissory notes to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), a state or private mortgage insurer, or Mortgage Electronic Registration System (MERS™).

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary, and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power of the Attorney-in-Fact that all conditions precedent to such exercise of power has been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of September, 2011.

Federal National Mortgage Association

By: ______________________
Barbara Cushman
Asst. Vice President

By ______________________
Shanicka Singleton
Assistant Secretary

STATE OF VIRGINIA )
COUNTY OF FAIRFAX )

The foregoing instrument was acknowledged before me, a notary public commissioned in Fairfax County, Virginia this 12th day of September, 2011 by Barbara Cushman, Assistant Vice President, and Shanicka Singleton, Assistant Secretary of Federal National Mortgage Association, a United States Corporation, on behalf of the corporation.

______________________
Notary Public: Francisco Nicco-Annan
My Commission Expires: 02/28/2015

Francisco Nicco-Annan
NOTARY PUBLIC
Commonwealth of Virginia
Reg #7387255
My Commission Expires 2/28/2015

 I, *Richard W. Hobernicht*, Director of Assessment andTaxation and Ex-Officio County Clerk for Washington County, do hereby certify this to be a true and correct copy of the original.

Date: November 01, 2011

By: [signature], Deputy

Prepared by: CHRIS DAVIES

LOAN #: [redacted]

# InterestOnly[SM] ADJUSTABLE RATE NOTE

(One-Year LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| JULY 31, 2006 | OCONOMOWOC | WISCONSIN |
|---|---|---|
| [Date] | [City] | [State] |

N8097 Lac La Belle Dr, Oconomowoc, WI 53066-5509
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 196,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Countrywide Bank, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

Solely for the purpose of computing interest, a montly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on each due date.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on SEPTEMBER 01, 2006. Before the first Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on AUGUST 01, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 660694, Dallas, TX 75266-0694 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,184.17 before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of AUGUST, 2016, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The

Initials: [signature]

LOAN #: 

date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

LOAN #: 

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) No Waiver By Note Holder**

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

LOAN #: [redacted]

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Michael E. Krueger (Seal)
MICHAEL E. KRUEGER -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

*[Sign Original Only]*

41

000114

1204258

RECEIVED FOR RECORD
at 11:05 o'clock A M

AUG 0 1 2006

REGISTER OF DEEDS
JEFFERSON COUNTY, WI

# MORTGAGE

DOCUMENT NUMBER

NAME & RETURN ADDRESS
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL IDENTIFIER NUMBER
012-0816-2511-000

[Space Above This Line For Recording Data]

WI[redacted] [Escrow/Closing #] [redacted] [Doc ID #]

MIN [redacted]

THIS IS A PURCHASE MONEY MORTGAGE
THIS IS HOMESTEAD PROPERTY

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JULY 31, 2006 , together with all Riders to this document.

(B) "Borrower" is
MICHAEL E KRUEGER and MEG B. KRUEGER, husband and wife

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is
Countrywide Bank, N.A.
Lender is a NATL. ASSN.
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314

(E) "Note" means the promissory note signed by Borrower and dated JULY 31, 2006 . The Note states that Borrower owes Lender
ONE HUNDRED NINETY SIX THOUSAND and 00/100

Dollars (U.S. $ 196,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 01, 2036 .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

EXHIBIT
3

000115

DOC ID #: [redacted]

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider [ ] Condominium Rider [ ] Second Home Rider
[ ] Balloon Rider [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider [ ] Biweekly Payment Rider [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY of JEFFERSON
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of
N8097 Lac La Belle Dr, Oconomowoc
[Street/City]
Wisconsin 53066-5509 ("Property Address"):
[Zip Code]

000116

DOC ID #: [redacted]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any

000117

DOC ID #:

or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

.000118

DOC ID #:

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

000119

DOC ID #: [redacted]

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

DOC ID #: [redacted]

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

000121

DOC ID #: [redacted]

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

000123

DOC ID #: [redacted]

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Accelerated Redemption Periods.** If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

**25. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Michael E. Krueger _____ (Seal)
MICHAEL E. KRUEGER -Borrower

Meg Krueger _____ (Seal)
MEG B. KRUEGER -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

-000124

STATE OF WISCONSIN, Waukesha County ss: DOC ID #: [redacted]

The foregoing instrument was acknowledged before me this 7-31-06

by Michael F Krueger and Meg B. Krueger

My Commission Expires: is permanent

[signature]

Notary Public, State of Wisconsin

This instrument was prepared by
CHRIS DAVIES
COUNTRYWIDE HOME LOANS, INC.
13303 WASHINGTON AVE, STURTEVANT, WI 53177

SCOTT M. BENSON
NOTARY
PUBLIC
STATE OF WISCONSIN

000125

Prepared by: CHRIS DAVIES

Countrywide Bank, N.A.

Branch #:
13303 WASHINGTON AVE
STURTEVANT, WI 53177
Phone: (262)321-6200
Br Fax No.: (262)886-7509

DATE: 07/31/2006
CASE #:
DOC ID #:
BORROWER: MICHAEL N. KRUEGER
PROPERTY ADDRESS: N8097 Lac La Belle Dr
Oconomowoc, WI 53066-5509

## LEGAL DESCRIPTION EXHIBIT A

All that part of the Northeast Quarter of Section 25, Township 8 North, Range 16 East, in the Town of Ixonia, Jefferson County, Wisconsin, described as follows:

Commencing at a point on the Northerly line of Section 25 a distance of 2404.64 feet Easterly from the quarter post on said Section line; thence South 89° 40' East along said Section line a distance of 174.75 feet to the center line of a public road, said center line being also the Easterly line of Section 25 and of Jefferson County; thence South 0° 57' East along the County line a distance of 125 feet; thence North 89° 40' West a distance of 174.75 feet; thence North 0° 57' West a distance of 125 feet to the point of beginning.

ALSO a part of the Northeast Quarter of Section 25, Township 8 North, Range 16 East, Town of Ixonia, Jefferson County, Wisconsin, described as follows, to-wit:

Commencing at the Northeast corner of said Section 25; thence South along the East line of said Section and centerline of County line Road, 125 feet to a point; thence North 89° 40' West, 174.75 feet to the point of beginning of the land to be described; thence continuing North 89° 40' West, 25.25 feet to the Northwest corner of Lot 1, LaBelle Heights; thence North 125 feet to a point; thence South 89° 40' East, 25.25 feet to a point; thence South, 125 feet to the point of beginning.

Tax Key No.012-0816-2511-000
Address: N8097 Lac Labelle Dr.

Case 3-13-14389-rdm Claim 7 Filed 10/11/13 Desc Main Document Page 27 of 36

000126

[Space Above This Line For Recording Data]

# FIXED/ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:
012-0816-2511-000

Prepared By:
CHRIS DAVIES
COUNTRYWIDE HOME LOANS, INC.

13303 WASHINGTON AVE
STURTEVANT
WI 53177

[Escrow/Closing #]

[Doc ID #]

THIS FIXED/ADJUSTABLE RATE RIDER is made this THIRTY-FIRST day of JULY, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to Countrywide Bank, N.A. ("Lender") of the same date and covering the property described in the Security Instrument and located at:

N6097 Lac La Belle Dr, Oconomowoc, WI 53066-5509
[Property Address]

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
2U796-XX (04/02)(d) Page 1 of 4 Initials: 

000127

DOC ID #: [redacted]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of 7.250 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of AUGUST, 2016 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

000128

DOC ID #: [redacted]

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Case 3-13-14389-rdm Claim 7 Filed 10/11/13 Desc Main Document Page 30 of 36

.000129

DOC ID #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____________________(Seal)
MICHAEL E. KRUEGER - Borrower

_____________________(Seal)
MEG B. KRUEGER - Borrower

_____________________(Seal)
- Borrower

_____________________(Seal)
- Borrower

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
2U786-XX (04/03) Page 4 of 4

Document Number

STATE BAR OF WISCONSIN FORM 14-1998 000001

ASSIGNMENT OF MORTGAGE

Document # 1270739
Office of Register of Deeds
Jefferson County, WI
RECEIVED FOR RECORD
Dec 29, 2009 AT 09:40 AM

Staci Hoffman
Total Pages 1
Fee 11.00
TT false N

Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Bank, N.A. for a valuable consideration assigns to BAC Home Loans Servicing, L.P. the Mortgage executed by Michael E. Krueger and Meg B. Krueger to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Bank, N.A. on July 31, 2006 and recorded in the office of the Register of Deeds of Jefferson County, Wisconsin, on August 1, 2006 as Document Number 1204258 together with the Note and indebtedness it secures.

The original principal balance of said Mortgage is $196,000.00

For information purposes only:
Address: N8097 Leo La Belle Drive, Oconomowoc, WI 53066

Recording Area
Name and Return Address
Blommer Peterman S.C.
13700 W. Greenfield Avenue
Brookfield, WI 53005
BAC Home Loans Servicing, L.P. v Krueger

012-0816-2511-000
Parcel Identification Number (PIN)

All that part of the Northeast 1/4 of Section 25, Township 8 North, Range 16 East, in the Town of Ixonia, Jefferson County, Wisconsin, described as follows: Commencing at a point on the Northerly line of Section 25 a distance of 2404.64 feet Easterly from the quarter post on said Section line; thence South 89°40' East along said Section line a distance of 174.75 feet to the center line of a public road, said center line being also the Easterly line of Section 25 and of Jefferson County; thence South 0°57' East along the County line a distance of 125 feet; thence North 89°40' West a distance of 174.75 feet; thence North 0°57' West a distance of 125 feet to the point of beginning. ALSO a part of the Northeast 1/4 of Section 25, Township 8 North, Range 16 East, Town of Ixonia, Jefferson County, Wisconsin, described as follows, to-wit: Commencing at the Northeast corner of said Section 25; thence south along the East line of said Section and centerline of County Line Road, 125 feet to a point; thence North 89°40' West, 174.75 feet to the point of beginning of the land to be described; thence continuing North 89°40' West, 25.25 feet to the Northwest corner of Lot 1, LaBelle Heights; thence North 125 feet to a point; thence South 89°40' East, 25.25 feet to a point; thence South, 125 feet to the point of beginning.

This assignment is made without recourse.
(OR) Assignor covenants that there is now owning and unpaid on the note and Mortgage, as principal, a sum of not less than ______ Dollars, and also interest ______ and that the Assignor is the owner of the note and mortgage and has good right to assign it.

Dated this 18th day of December, 2009.

Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Bank, N.A.

*BY: James M. Peterman
SBN: 1016476

Certified as Assistant Secretary and Vice President of Mortgage Electronic Registration Systems, Inc. per Corporate Resolution effective 3/18/2008.

AUTHENTICATION

Signature of ______

authenticated this ______ day of ______, ______.

* ______

TITLE: MEMBER STATE BAR OF WISCONSIN

THIS INSTRUMENT WAS DRAFTED BY:
Scott D. Nabke, State Bar No. 1037979

(Signatures may be authenticated or acknowledged. Both are not necessary.)

ACKNOWLEDGMENT

State of Wisconsin )
County of Waukesha )

Personally came before me this 18th day of December, 2009, the above named James M. Peterman
SBN: 1016476

to me known to be the person(s) who executed the foregoing instrument and acknowledge the same.

Susan E. Tegge
Notary Public, State of Wisconsin
My Commission is permanent. (If not, state expiration date: 3-17-2013)

NOTARY PUBLIC — STATE OF WISCONSIN

* Names of persons signing in any capacity should be typed or printed below their signatures

EXHIBIT
4

000013

Document # 1309821
Office of Register of Deeds
Jefferson County, WI
RECEIVED FOR RECORD
Apr. 24, 2012 AT 8:46 am

Staci M. Hoffman
Total Pages 2
Fee 30.00
TT .00

## ASSIGNMENT OF MORTGAGE

Recording Requested By:
Bank of America
Prepared By: Diana De Avila
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
[redacted]

DocID# [redacted]
Tax ID: 012-0816-2511-000
Property Address:
N8097 Lac La Belle Dr
[redacted]

This space for Recorder's use

MIN #: [redacted] MERS Phone #: 888-679-6377

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 13150 WORLD GATE DR, HERNDON, VA 20170 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender: COUNTRYWIDE BANK, N.A.
Mortgagor(s): MICHAEL E KRUEGER AND MEG B. KRUEGER, HUSBAND AND WIFE
Date of Mortgage: 7/31/2006
Original Loan Amount: $196,000.00
Recorded in Jefferson County, WI on: 8/1/2006, book N/A, page 000114 and instrument number 1204258

Property Legal Description:
ALL THAT PART OF THE NORTHEAST QUARTER OF SECTION 25, TOWNSHIP 8 NORTH, RANGE 16 EAST, IN THE TOWN OF LXONIA, JEFFERSON COUNTY, WISCONSIN, DESCRIBED AS FOLLOWS: COMMENCING AT A POINT ON THE NORTHERLY LINE OF SECTION 25 A DISTANCE OF 2404.64 FEET EASTERLY FROM THE QUARTER POST ON SAID SECTION LINE; THENCE SOUTH 89 DEGREES 40' EAST ALONG SAID SECTION LINE A DISTANCE OF 174.75 FEET TO THE CENTER LINE OF A PUBLIC ROAD, SAID CENTER LINE BEING ALSO THE EASTERLY LINE OF SECTION 25 AND OF JEFFERSON COUNTY; THENCE SOUTH 0 DEGREES 57' EAST ALONG THE COUNTY LINE A DISTANCE OF 125 FEET; THENCE NORTH 89 DEGREES 40' WEST A DISTANCE OF 174.75 FEET; THENCE NORTH 0 DEGREES 57' WEST A DISTANCE OF 125 FEET TO THE POINT OF BEGINNING. ALSO A PART OF THE NORTHEAST QUARTER OF SECTION 25, TOWNSHIP 8 NORTH, RANGE 16 EAST, TOWN OF LXONIA, JEFFERSON COUNTY, WISCONSIN, DESCRIBED AS FOLLOWS, TO-WIT: COMMENCING AT THE NORTHEAST CORNER OF SAID SECTION 25; THENCE SOUTH ALONG THE EAST LINE OF SAID SECTION AND CENTERLINE OF COUNTY LINE ROAD, 125 FEET TO A POINT; THENCE NORTH 89 DEGREES 40' WEST, 174.75 FEET TO THE POINT OF BEGINNING OF THE LAND TO BE DESCRIBED; THENCE CONTINUING NORTH 89 DEGREES 40' WEST, 25.25 FEET TO THE NORTHWEST CORNER OF LOT 1, LABELLE HEIGHTS; THENCE NORTH 125 FEET TO A POINT; THENCE SOUTH 89 DEGREES 40' EAST, 25.25 FEET TO A POINT; THENCE SOUTH, 125 FEET TO THE POINT OF BEGINNING. TAX KEY NO.012-0816-2511-000 ADDRESS: N8097 LAC LABELLE DR.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on 4/11/12

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Witness: Martha Munoz

By: Dominique Johnson Assistant Secretary

EXHIBIT 5

000014

State of California
County of Ventura

On April 11, 2012 before me, Deborah L. Beard, Notary Public, personally appeared Dominique Johnson, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Deborah L. Beard

My Commission Expires: June 28, 2013

(Seal)

DEBORAH L. BEARD
Commission # 1853813
Notary Public - California
Ventura County
My Comm. Expires Jun 28, 2013

DocID#

000083

CORPORATION ASSIGNMENT OF MORTGAGE

Document Title

Document # 1322597
Office of Register of Deeds
Jefferson County, WI
RECEIVED FOR RECORD
Dec. 20, 2012 AT 10:38 am

Staci M. Hoffman
Total Pages 2
Fee 30.00
TT .00

Recording Area

Recording requested by:
BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP

When recorded mail to:
BANK OF AMERICA, N.A
DOCUMENT PROCESSING MAIL CODE
TX2-979-01-19
4500 AMON CARTER BLVD
FORT WORTH, TX 76155
Attn: Assignment Unit

012-0816-2511-000
Parcel Identification Number (PIN)

Doc. ID# [redacted]
Commitment#

For value received, the undersigned, BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063, hereby grants, assigns and transfers to:
FEDERAL NATIONAL MORTGAGE ASSOCIATION
14523 SW MILLIKAN WAY #200, BEAVERTON, OR 97005

All its interest under that certain Mortgage dated 7/31/06, executed by: MICHAEL E KRUEGER, Mortgagor as per MORTGAGE recorded as Instrument No. 1204258 on 8/01/06 in Book ______ Page ______ of official records in the County Recorder's Office of JEFFERSON County, WISCONSIN.
Original Mortgage $196,000.00
N8097 Lac La Belle Dr, Oconomowoc, WI 53066

(See page attached hereto for Legal Description)

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 12/05/2012

BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP

By ______
LISA NIX, ASSISTANT VICE PRESIDENT

State of California
County of Ventura

On 12/05/2012 before me, CYNTHIA R GOLDBECK, Notary Public, personally appeared LISA NIX, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: ______
CYNTHIA R GOLDBECK

CYNTHIA R. GOLDBECK
Commission # 1964726
Notary Public - California
Los Angeles County
My Comm. Expires Aug 8, 2016

Prepared by: THANIA ORNELAS
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063
Phone#: (213) 345-0979

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way #200 Beaverton, OR 97005, (866)570-5277, which is responsible for receiving payments.

EXHIBIT 6

# POST-PETITION PAYMENT HISTORY

| | Prepared | 3/10/2017 |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

Name: Krueger
Loan #: [redacted]
Case #: 13-14389
Date Filed: 09/04/2013
Date Modified (MODH):

| Date Received | Amount Received | $ Applied To Payment | Post-Petition Date Paid | Paid To Suspense | Running Suspense Total | Payment Amount | |
|---|---|---|---|---|---|---|---|
| | | | | | $ - | | |
| | | | | | $ - | | |
| 10/7/2013 | $ 1,545.27 | $1,545.27 | Oct-13 | $ - | $ - | | 1st Payment |
| 11/8/2013 | $ 1,668.94 | $1,668.94 | Nov-13 | $ - | $ - | | NPC |
| 12/8/2013 | $ 1,668.94 | $1,668.94 | Dec-13 | $ - | $ - | | |
| 1/10/2014 | $ 1,668.94 | $1,668.94 | Jan-14 | $ - | $ - | | |
| 2/12/2014 | $ 1,668.94 | $1,668.94 | Feb-14 | $ - | $ - | | |
| 3/18/2014 | $ 1,668.94 | $1,668.94 | Mar-14 | $ - | $ - | | |
| 4/8/2014 | $ 1,668.94 | $1,668.94 | Apr-14 | $ - | $ - | | |
| 5/22/2014 | $ 1,668.94 | $1,668.94 | May-14 | $ - | $ - | | |
| 6/20/2014 | $ 1,668.94 | $1,668.94 | Jun-14 | $ - | $ - | | |
| 7/23/2014 | $ 1,668.94 | $1,668.94 | Jul-14 | $ - | $ - | | |
| 8/28/2014 | $ 1,668.94 | $1,668.94 | Aug-14 | $ - | $ - | | |
| 9/12/2014 | $ 1,668.94 | $1,668.94 | Sep-14 | $ - | $ - | | |
| 10/20/2014 | $ 1,668.94 | $1,668.94 | Oct-14 | $ - | $ - | | |
| 11/26/2014 | $ 1,668.94 | $1,668.94 | Nov-14 | $ - | $ - | | |
| 12/16/2014 | $ 1,668.94 | $1,668.94 | Dec-14 | $ - | $ - | | |
| 1/5/2015 | $ 1,668.94 | $1,668.94 | Jan-15 | $ - | $ - | | |
| 3/6/2015 | $ 3,337.88 | $1,668.94 | Feb-15 | $ 1,668.94 | $ 1,668.94 | | |
| | | $1,668.94 | Mar-15 | $(1,668.94) | $ - | | |
| 4/7/2015 | $ 1,668.94 | $1,668.94 | Apr-15 | $ - | $ - | | |
| 6/23/2015 | $ 3,337.88 | $1,668.94 | May-15 | $ 1,668.94 | $ 1,668.94 | | |
| | | $1,668.94 | Jun-15 | $(1,668.94) | $ - | | |
| 7/21/2015 | $ 1,668.94 | $1,668.94 | Jul-15 | $ - | $ - | | |
| 8/27/2015 | $ 1,668.94 | $1,668.94 | Aug-15 | $ - | $ - | | |

Exhibit 7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10/31/2015 | $ 3,337.88 | $1,668.94 | Sep-15 | $ 1,668.94 | $ 1,668.94 | | |
| | | $1,668.94 | Oct-15 | $(1,668.94) | $ - | | |
| 12/30/2015 | $ 3,248.00 | $1,623.58 | Nov-15 | $ 1,624.42 | $ 1,624.42 | | NPC |
| | | $1,623.58 | Dec-15 | $(1,623.58) | $ 0.84 | | |
| 3/23/2016 | $ 1,625.00 | $1,623.58 | Jan-16 | $ 1.42 | $ 2.26 | | |
| 3/24/2016 | $ 1,625.00 | $1,623.58 | Feb-16 | $ 1.42 | $ 3.68 | | |
| 5/17/2016 | $ 3,250.00 | $1,623.58 | Mar-16 | $ 1,626.42 | $ 1,630.10 | | |
| | | $1,623.58 | Apr-16 | $(1,623.58) | $ 6.52 | | |
| 8/15/2016 | $ 1,625.00 | $1,623.58 | May-16 | $ 1.42 | $ 7.94 | | |
| 9/30/2016 | $ 1,625.00 | $1,623.58 | Jun-16 | $ 1.42 | $ 9.36 | | |
| 12/16/2016 | $ 1,625.00 | $1,623.58 | Jul-16 | $ 1.42 | $ 10.78 | | |
| UNPAID | | | Aug-16 | $ - | $ 10.78 | $ 1,623.58 | |
| UNPAID | | | Sep-16 | $ - | $ 10.78 | $ 1,576.49 | NPC |
| UNPAID | | | Oct-16 | $ - | $ 10.78 | $ 1,576.49 | |
| UNPAID | | | Nov-16 | $ - | $ 10.78 | $ 1,576.49 | |
| UNPAID | | | Dec-16 | $ - | $ 10.78 | $ 1,576.49 | |
| UNPAID | | | Jan-17 | $ - | $ 10.78 | $ 1,576.49 | |
| UNPAID | | | Feb-17 | $ - | $ 10.78 | $ 1,576.49 | |
| UNPAID | | | Mar-17 | $ - | $ 10.78 | $ 1,576.49 | |
| | | | | | Payments | $ 12,659.01 | |
| | | | | | Suspence | $ 10.78 | |
| | | | | | Total Due | $ 12,648.23 | |

Parcel Number - 012-0816-2511-000 MAP
Parcel Status - ACTIVE

Data Updated - January 04, 2017 2:00pm

## PARCEL INFORMATION

| | |
|---|---|
| Municipality | Town of Ixonia |
| State Municipality Code | 012 |
| Township | 08 |
| Range | 16 |
| Section | 25 |
| Quarter-Quarter | 11 |
| ID | 000 |

## PARCEL OWNERS

(CLICK ON NAME TO LIST PARCELS WITH OWNERS NAME)

| Last Name | First Name | M.I. | JR/SR |
|---|---|---|---|
| KRUEGER | MIKE | E | |
| KRUEGER | MEG | B | |

## PARCEL ADDRESSES

| Address | City | Zip |
|---|---|---|
| N8097 LAC LABELLE DR | OCONOMOWOC | 53066 |

## BILL ADDRESS

| | |
|---|---|
| Name | MIKE E KRUEGER<br>MEG B KRUEGER |
| Street | N8097 LAC LABELLE DR |
| City State Zip | OCONOMOWOC, WI 53066 |

## ZONING INFORMATION

Zoning Permits & Petitions

## PROPERTY SIZE

| Acres | Front | Depth |
|---|---|---|
| 0.500 | 125.00 | 200.00 |

## BRIEF LEGAL DESCRIPTION

(NOT FOR USE ON LEGAL DOCUMENTS)

BEG NE/S/C, W200FT, S125FT, E200FT, N125FT TO POB

## VALUATION INFORMATION

| | 2016 | 2015 |
|---|---|---|
| Assessment Year | 2016 | 2015 |
| Assessment Acres | 0.500 | 0.500 |
| Assessed Land Value | $61,200 | $61,200 |
| Assessed Improved Value | $164,000 | $164,000 |
| Total Value | $225,200 | $225,200 |

Current year valuations are subject to change until Board of Review final adjournment Assessment Detail

## TAX INFORMATION

2016 2015 2014 2013 2012 2011 2010 2009

**2016 Tax Values** — **Not Delinquent**

Tax Payments will not be display until County settlement with Local Treasurer in February 2017

Display Tax Bill Image

| | | Paid | Balance |
|---|---|---|---|
| General Taxes: | 3,500.77 | | |
| First Dollar | 65.38 | | |
| Lottery Credit | 122.95 | | |
| General Tax | 3,312.44 | 0.00 | 3,312.44 |
| Specials | 328.35 | | 328.35 |
| MFL | | | |
| Tax Totals | 3,640.79 | 0.00 | 3,640.79 |

| Category | Assessed Value | Average Assessment Ratio | Estimated Market Value |
|---|---|---|---|
| Land | 61,200 | | |
| Improvement | 164,000 | | |
| Total | 225,200 / | 1.0195 | 220,900 |

| First Installment | 1,923.79 | Second Installment | 1,717.00 |
|---|---|---|---|

Tax Detail | Print Summary | Payment History

## DISTRICT INFORMATION

| Type | State Code | Description |
|---|---|---|
| School District | 674060 | OCONOMOWOC SCH DIST |
| Technical College | 000800 | WCTC |
| Sanitary District | 287050 | IXONIA SAN DIST 2 |

## RECORDED DOCUMENTS

| Doc. Type | Status | Document Date | Sa... An... |
|---|---|---|---|



UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION

---

In re:
Michael E. Krueger & Meg B. Krueger,
Debtors.

Chapter 13
Case No. 13-14389-CJF

---

CERTIFICATE OF SERVICE

---

The undersigned certifies that on the 24th day of March, 2017, she caused a copy of this Notice of Motion and Motion for Relief from Automatic Stay and proposed Order to be served by U.S. mail on Debtors, Michael E. Krueger & Meg B. Krueger, at N8097 Lac La Belle Drive, Oconomowoc, Wisconsin, 53066-5509, and on the same date by electronic means *via* CM/ECF on the debtors' counsel, Todd C. Esser and Steven E. Berg, and Mark Harring, Chapter 13 Trustee, and the office of the United States Trustee.

Dated at Wauwatosa, Wisconsin this 24th day of March, 2017.

Shannon K. Cummings

**Creditor Mailing Matrix (Case No. 13-14389-CJF)**

Drafted by:
Shannon K. Cummings
O'Dess and Associates, S.C.
1414 Underwood Avenue, Suite 403
Wauwatosa, WI 53213
(414) 727-1591
(414) 727-1590 fax
Scummings@odesslaw.com

Label Matrix for local noticing
0758-3
Case 3-13-14389-cjf
Western District of Wisconsin
Madison
Wed Jan  4 15:17:14 CST 2017

ALTAIR OH XIII, LLC
C O WEINSTEIN,PINSON AND RILEY, PS
2001 WESTERN AVENUE, STE 400
SEATTLE, WA 98121-3132

Asset Management Services, Inc.
PO Box 5130
Elm Grove, WI 53122-5130

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Steven E. Berg
Todd C. Esser & Associates          *
11805 W. Hampton Avenue
Suite 200
Milwaukee, WI 53225-3612

CACH LLC/Square Two Financial
Attention: Bankruptcy
4340 South Monaco St.  2nd Floor
Denver, CO 80237-3485

Capital 1 Bank
Attn: Bankruptcy Dept.
PO Box 30285
Salt Lake City, UT 84130-0285

Chase
PO Box 15298
Wilmington, DE 19850-5298

(p)CITIBANK
PO BOX 790034
ST LOUIS MO 63179-0034

Citibank, N.A.
701 East 60th Street North
Sioux Falls, SD 57104-0493

Discover Bank
DB Servicing Corporation
PO Box 3025
New Albany, OH  43054-3025

Discover Fin Svcs LLC
PO Box 15316
Wilmington, DE 19850-5316

ECMC
P.O. BOX 16408
ST. PAUL, MN 55116-0408

Todd C. Esser
Todd C. Esser & Associates          *
11805 W. Hampton Avenue
Milwaukee, WI 53225-3612

Federal National Mortgage Association
(Fannie Mae), creditor c/o Seterus,Inc.  *
PO Box 1047
Hartford, CT 06143-1047

Ford Motor Credit Company
PO Box 64400
Colorado Springs, CO 80962-4400

(p)FORD MOTOR CREDIT COMPANY
P O BOX 62180
COLORADO SPRINGS CO 80962-2180

(p)GREENTREE SERVICING LLC
BANKRUPTCY DEPARTMENT
P O BOX 6154
RAPID CITY SD 57709-6154

Green Tree
PO Box 6172
Rapid City, SD 57709-6172

Mark Harring
131 W. Wilson Street, Suite 1000    *
Madison, WI 53703-3260

IRS - Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Meg B. Krueger
N8097 Lac La Belle Drive
Oconomowoc, WI 53066-5509

Michael E. Krueger
N8097 Lac La Belle Drive
Oconomowoc, WI 53066-5509

LVNV Funding LLC, C/O Resurgent Capital Serv
P.O. Box 10587
Greenville, SC 29603-0587

Law Office of Richard Clark, PLLC
3030 South Gessner Suite #200
Houston, TX 77063-3733

D. Alexander Martin
O'Dess and Associates, S.C.         *
1414 Underwood Avenue
Suite 403
Wauwatosa, WI 53213-2653

O'Dess and Associates, SC
M. Abigail O'Dess                   *
1414 Underwood Avenue, Suite 403
Wauwatosa, WI 53213-2653

PR Mgmt.
741 N Grand Ave
Waukesha, WI 53186-4831

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

ProHealth Care
PO Box 3166
Milwaukee, WI 53201-3166

ProHealth Care
PO Box 3475
Toledo, OH 43607-0475

Quantum3 Group LLC as agent for
MOMA Funding LLC
PO Box 788
Kirkland, WA 98083-0788

Radiology Waukesha, SC
PO Box 1790
Brookfield, WI 53008-1790

Sallie Mae
Attn: Claims Department
PO Box 9500
Wilkes-Barre, PA 18773-9500

Sallie Mae Inc. on behalf of GLHEC
2401 International Lane
Madison, WI 53704-3121

Sears/CBNA
PO Box 6282
Sioux Falls, SD 57117-6282

Secretary of Treasury
Treasury Department
1500 Pennsylvania Avenue N.W.
Washington, DC 20220-0001

Securities and Exchange Commission
175 West Jackson Boulevard
Suite 900
Chicago, IL 60604-2908

Seterus Inc
Atten: Bankruptcy Department
PO Box 2206
Grand Rapids, MI 49501-2206
*

Seterus, Inc. as the authorized subservicer
P.O Box 1047
Hartford, CT 06143-1047
*

U.S. Trustee's Office
U.S. Trustee's Office
Suite 304
780 Regent Street
Madison, WI 53715-2635
*

Wi Electric / We Energies
Attention: Jill Costello
PO Box 2046 Room A130
Milwaukee, WI 53201-2046

Wisconsin Department of Revenue
Special Procedures Unit
P.O. Box 8901
Madison, WI 53708-8901

Wisconsin Department of Revenue
Attn: Special Procedures, MS 4-SPU
PO BOX 8901
Madison WI 53708-8901

Wisconsin Department of Revenue
Mail Stop 4-206
PO Box 8901
Madison, WI 53708-8901

Notice and Motion will not be served by US Mail on the entities at the addresses below or the entities marked with asterisk above.

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bank of America
PO Box 982235
El Paso, TX 79998

Citibank SD, NA
Attn: Centralized Bankruptcy
PO Box 20363
Kansas City, MO 64195

Ford Motor Credit Company
c/o National Bankruptcy Service Center
PO Box 537901
Livonia, MI 48153-7901

(d)Ford Motor Credit Company LLC
Dept 55953
P O Box 55000
Detroit MI 48255-0953

(d)Ford Motor Credit Corporation
Ford Motor Credit
PO Box 6275
Dearborn, MI 48121

GREEN TREE SERVICING LLC
P.O. BOX 6154
RAPID CITY, SD 57709-6154

(d)Green Tree Servicing
PO Box 6154
Rapid City, SD 57709

Portfolio Recovery Associates, LLC
PO Box 12914
Norfolk VA 23541

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)ECMC
PO BOX 16408
ST. PAUL, MN 55116-0408

(d)LVNV Funding LLC, C/O Resurgent Capital Se
P.O. Box 10587
Greenville, SC 29603-0587

(d)Quantum3 Group LLC as agent for
MOMA Funding LLC
PO Box 788
Kirkland, WA 98083-0788

End of Label Matrix

| | |
|---|---|
| Mailable recipients | 45 |
| Bypassed recipients | 3 |
| Total | 48 |